**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**CHRISTOPHER L. ISOM**
Brand & Morelock
Greenfield, Indiana

ATTORNEYS FOR APPELLEE:

**KELLIE E. MEARS**
Greenfield, Indiana

**ROBERT J. HENKE**
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| IN RE THE MATTER OF THE TERMINATION OF THE PARENT/CHILD RELATIONSHIP OF M.B., D.B., and D.S., minor children, | ) ) ) ) | |
| M.B., mother, | ) ) | |
| Appellant-Respondent, | ) ) | |
| vs. | ) ) | No. 30A04-1110-JT-554 |
| INDIANA DEPARTMENT OF CHILD SERVICES, | ) ) ) | |
| Appellee-Petitioner. | ) ) | |

APPEAL FROM THE HANCOCK CIRCUIT COURT
The Honorable Richard D. Culver, Judge
Cause Nos. 30C01-1101-JT-11, 12, 13

**April 24, 2012**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**BARNES, Judge**

**Case Summary**

M.B. ("Mother") appeals the termination of her parent-child relationship with

D.S., M.B., Jr.,[1] and D.B., Jr. We affirm.

**Issues**

Mother raises five issues, which we consolidate, reorder, and restate as:

    I.     whether the trial court properly denied her motion for continuance; and

    II.    whether there is sufficient evidence to support the termination of her parental rights.

**Facts**

D.S. was born on September 23, 2006, M.B., Jr., was born on November 10, 2007,

and D.B., Jr., was born on December 4, 2008. Mother and D.B. are married, and D.B. is

the father of M.B., Jr., and D.B., Jr.[2]

In May 2009, Mother, D.B., and the children were living in a homeless shelter in

Hancock County when Department of Child Services ("DCS") received a report that

Mother had struck D.S. and caused him injuries. Mother was arrested, charged with

battery, and incarcerated. D.B. indicated to DCS officials that he could not care for the

children and continue to work, and the children were placed in foster care. In June 2009,

DCS filed a petition alleging the children where children in need of services ("CHINS").

Mother eventually admitted to the allegations in the CHINS petition and, in September

---

[1] M.B., Jr.'s, name is the same as Mother's. Although her legal name does not include "Junior," because many of the exhibits, much of the trial testimony, and the trial court's order referred to her as M.B., Jr., we also refer to her as M.B., Jr.

[2] The children's fathers' parental rights are not at issue in this appeal. We reference D.B. as necessary to address the issues raised by Mother in her appeal.

2

2009, the trial court ordered Mother to participate in various services and continued the children's placement in foster care. Mother pled guilty to Class D felony battery and was sentenced to eighteen months suspended followed by eighteen months probation.

In October 2009, the children were returned to Mother's care. Mother was making progress in her ability to care for the children and successfully completed home-based counseling. Mother lived with D.B.'s cousin and was receiving assistance from community resources and her church.

Before Mother gave birth to another child in December 2009, the children were temporarily placed in foster care with Mother's consent. After Mother gave birth, the children were returned to Mother.[3]

In February 2010, D.B., who had been living in Porter County, returned to Greenfield. D.B. and Mother eventually moved into their own apartment. From February 2010 until May 2010, Mother worked at a fast food restaurant. Other than this employment, Mother relied on D.B.'s income, TANF, food stamps, and donations.

In July 2010, Mother and D.B. could not pay their rent and were evicted. At that point, DCS officials held a meeting with Mother and D.B. and various options were discussed, including Mother and D.B. going to a homeless shelter with the children. Mother did not want to return to a homeless shelter and agreed that the children should go to foster care. Mother and D.B. did not secure housing and lived in a minivan. At some point, D.B. cut the windows out of the minivan with a chainsaw.

---

[3] This child has been the subject of a guardianship since her birth.

Mother's attitude toward and cooperation with DCS deteriorated. During a July 2010 visit with the children, Mother spoke badly of the foster parents in front of the children and became upset. DCS stopped the visit, and Mother subsequently sent a text message to the home-based therapist containing an expletive. DCS stopped services until Mother completed a psychological evaluation, which she completed in September 2010. The psychologist who conducted the evaluation found several parenting concerns and concluded it was difficult to see how reunification would be possible in the near future.

In October 2010, Mother was alleged to have violated the terms of her probation. In December 2010, Mother admitted to violating her probation and agreed to a six-month executed sentence with no additional probation upon the execution of that sentence.

On January 10, 2011, DCS filed petitions to terminate the parent-child relationship. On January 24, 2011, Mother was released from jail. On February 16, 2011, Mother was charged with and pled guilty to Class B misdemeanor false informing. Mother was sentenced to fifty-six days in jail and was released on March 15, 2011. After her release, Mother contacted DCS, but visitation was not re-established because Mother did not have employment or her own transportation as had been required by the trial court. Mother's last visit with the children was on February 11, 2011.

A hearing on the termination petitions was scheduled for August 24, 2011. On August 23, 2011, Mother moved to continue the hearing because she was living in Lake Station near Illinois and did not have transportation to the hearing in Hancock County. The trial court denied the motion to continue. Instead, the trial court permitted Mother to participate via telephone, which she did, and Mother's attorney was present at the

4

hearing. On September 14, 2011, the trial court issued detailed orders terminating Mother's parental rights.[4] Mother now appeals.

**Analysis**

*I. Motion for Continuance*

Mother argues that the trial court abused its discretion by denying her motion to continue the termination hearing.[5] "The decision to grant or deny a motion for a continuance rests within the sound discretion of the trial court." Rowlett v. Vanderburgh County Office of Family and Children, 841 N.E.2d 615, 619 (Ind. Ct. App. 2006), trans. denied. We will reverse the trial court only for an abuse of that discretion, which may be found when the moving party has shown good cause for granting the motion. Id. No abuse of discretion will be found when the moving party has not demonstrated that he or she was prejudiced by the denial. Id.

Mother argues that her motion to continue should have been granted because she did not have transportation to get to the hearing and would soon be able to get transportation to the hearing. She also argues that DCS did not demonstrate it would be prejudiced by a continuance and that, because no adoptive families had been located for the children, a continuance would have had little immediate impact on the children.

Even considering these factors, Mother has not established an abuse of discretion. The trial court denied the motion because, given Mother's financial circumstances, it was

---

[4] The trial court issued separate orders for each child. The orders are substantially the same as they relate to Mother's parental rights. For simplicity, we cite only the order relating to M.B., Jr., throughout this opinion.

[5] Mother does not argue on appeal that the denial of her motion to continue denied her due process.

unlikely that her transportation issues would be remedied in the near future. More importantly, Mother's attorney was present at the hearing, and Mother participated in the hearing via telephone. The record shows the trial court's efforts to encourage Mother's participation in the hearing by explaining what to do if the call was disconnected and explaining that, when Mother wanted to speak with her attorney, they would clear the courtroom to allow her to have a private conversation with her attorney. Under these circumstances, Mother has not shown the trial court abused its discretion by denying her motion for continuance.

## II. *Sufficiency of the Evidence*

Mother argues there is not sufficient evidence to support the termination of her parental rights. "When reviewing the termination of parental rights, we do not reweigh the evidence or judge witness credibility." In re I.A., 934 N.E.2d 1127, 1132 (Ind. 2010). We consider only the evidence and reasonable inferences most favorable to the judgment. Id. "We must also give 'due regard' to the trial court's unique opportunity to judge the credibility of the witnesses." Id. (quoting Indiana Trial Rule 52(A)). Where a trial court enters findings of fact and conclusions thereon, as the trial court did here, we apply a two-tiered standard of review. Id. "First, we determine whether the evidence supports the findings, and second we determine whether the findings support the judgment." Id. We will set aside the trial court's judgment only if it is clearly erroneous, which occurs if the findings do not support the trial court's conclusions or the conclusions do not support the judgment. Id.

A petition to terminate a parent-child relationship must allege:

(A) that one (1) of the following is true:

(i) The child has been removed from the parent for at least six (6) months under a dispositional decree.

(ii) A court has entered a finding under IC 31-34-21-5.6 that reasonable efforts for family preservation or reunification are not required, including a description of the court's finding, the date of the finding, and the manner in which the finding was made.

(iii) The child has been removed from the parent and has been under the supervision of a county office of family and children or probation department for at least fifteen (15) months of the most recent twenty-two (22) months, beginning with the date the child is removed from the home as a result of the child being alleged to be a child in need of services or a delinquent child;

(B) that one (1) of the following is true:

(i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.

(ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.

(iii) The child has, on two (2) separate occasions, been adjudicated a child in need of services;

(C) that termination is in the best interests of the child; and

(D) that there is a satisfactory plan for the care and treatment of the child.

Ind. Code § 31-35-2-4(b)(2). DCS has the burden of proving these allegations by clear and convincing evidence. I.A., 934 N.E.2d at 1133.

7

Mother contends DCS failed to prove by clear and convincing evidence that the conditions that led to the children's removal will not be remedied and that the continuation of the parent-child relationship poses a threat to the children's well-being. Although Mother argues that DCS failed to prove two factors, the current version of the statute required DCS to allege only one of the three factors listed in Indiana Code Section 31-35-2-4(b)(2)(A). See also Bester v. Lake County Office of Family and Children, 839 N.E.2d 143, 148 n.5 (Ind. 2005) (observing that under the prior version of the statute DCS was required to prove either of the two factors, not both). Thus, we only need to address whether the continuation of the parent-child relationship poses a threat to the children's well-being.

Mother does not specifically challenge any of the trial court's findings of fact related to this factor. Instead, she argues that her poverty and criminal charges, not her ability to parent, were the basis for the termination. Although Mother initially made progress and was reunited with the children, after she was evicted in July 2010, Mother never maintained suitable or stable housing, was not able to support herself, violated her probation, and committed another criminal offense. Additionally, the results of the psychological examination, Mother's conduct during a supervised visit, and other testimony by Mother supported the trial court's concerns about her mental and emotional stability. To the extent Mother urges us to consider evidence of her parenting abilities before July 2010 and the resolution of her pending criminal cases, she is asking us to reweigh the evidence, we cannot. Further, a trial court should judge a parent's fitness to care for his or her child as of the time of the termination proceeding, taking into

8

consideration evidence of changed conditions. Bester, 839 N.E.2d at 152. Accordingly, we conclude that there is clear and convincing evidence that the continuation of the parent-child relationship posed a threat to the children's well-being.

Mother also argues DCS failed to prove by clear and convincing evidence that the termination of the parent-child relationship was in the children's best interests. Again, Mother does not specifically challenge the trial court's findings on this factor. Instead, she argues that, although she has been homeless at various times, she has demonstrated the ability to parent the children and was very close to gaining a place to live. She asserts there was no timeline for adoption and there was no evidence adoptive parents had been located. According to Mother, continuing the CHINS to allow her to reestablish stability was in the children's best interests.

Mother relies on In re G.Y., 904 N.E.2d 1257 (Ind. 2009), in which the mother was incarcerated for an offense that occurred before the child was conceived, was participating in services and educational programs while she was incarcerated, and had taken steps to provide permanency for G.Y. upon her release. Our supreme court concluded that G.Y.'s need for permanency through adoption was not a sufficiently strong reason, either alone or with the trial court's other reasons, to warrant the conclusion that termination of the parent-child relationship was in G.Y.'s best interests. G.Y., 904 N.E.2d at 1265-66.

This case is distinguishable from G.Y. because Mother committed the initial offense—battery on D.S.—after the children had been born and then violated her probation and committed another criminal offense while the CHINS and termination

9

proceedings were ongoing. More importantly, although Mother was incarcerated for a period of time, during the time in which she was not incarcerated she was unable to maintain suitable housing and stable income. Unlike in G.Y., Mother has already had the opportunity to establish stability for the children and did not do so. Under these circumstances, we cannot conclude that the trial court erred by denying Mother an additional opportunity to re-establish stability.

Mother also asserts DCS failed to prove by clear and convincing evidence that it had a satisfactory plan for the care and treatment of the children. Mother acknowledges that DCS's plan for the children is adoption. She points out, however, that the children's current foster home is not considered a pre-adoptive placement and that the trial court did not make any findings regarding this requirement.

Although the trial court's findings do not reference DCS's plan for the children, the trial court concluded, "[t]he Court further finds by clear and convincing evidence that the DCS has a satisfactory plan for the care and treatment for [M.B.], Jr. which plan is to pace her for adoption." App. p. 88. To the extent this is mischaracterized as a conclusion instead of a finding, "we look past these labels to the substance of the judgment." Fraley v. Minger, 829 N.E.2d 476, 482 (Ind. 2005). As such, we disagree with Mother that the judgment is clearly erroneous because the trial court failed to support its judgment with findings.

To the extent Mother questions whether the plan for adoption is satisfactory, adoption is generally considered to be a satisfactory plan under the termination of parental rights statute. See In re B.M., 913 N.E.2d 1283, 1287 (Ind. Ct. App. 2009). For

a plan to be "satisfactory," it need not be detailed, so long as it offers a general sense of the direction in which the child will be going after the parent-child relationship is terminated. See Lang v. Starke County Office of Family and Children, 861 N.E.2d 366, 374 (Ind. Ct. App. 2007), trans. denied. Although there was evidence that the current foster parents did not intend to adopt the children, DCS's plan for adoption offered the general sense of the direction the children would be going after termination. Mother has not established that the trial court's conclusion on this factor is clearly erroneous.

**Conclusion**

The trial court did not abuse its discretion in denying Mother's motion for continuance. Further, there is clear and convincing evidence to support the termination of Mother's parental rights. We affirm.

Affirmed.

FRIEDLANDER, J., and MAY, J., concur.