**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Nov 26 2012, 8:46 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANTS,
J.W. (Mother), B.W. (Father)

**CHRISTOPHER A. CAGE**
Anderson, Indiana

**JOHN T. WILSON**
Anderson, Indiana

ATTORNEYS FOR APPELLEE:

**REBECCA L. MOSES**
New Castle, Indiana

**ROBERT J. HENKE**
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| IN THE MATTER OF THE TERMINATION OF THE PARENT-CHILD RELATIONSHIP OF B.W. AND C.W. (Minor Children), | ) ) ) |
| | ) |
| J.W. (Mother) B.W. (Father), | ) |
| | ) |
| Appellants-Respondents, | ) |
| | ) |
| vs. | ) No. 33A04-1206-JT-289 |
| | ) |
| INDIANA DEPARTMENT OF CHILD SERVICES, | ) ) |
| | ) |
| Appellee-Petitioner. | ) |

APPEAL FROM THE HENRY CIRCUIT COURT
The Honorable Mary G. Willis, Judge
Cause No. 33C01-1202-JT-3, 33C01-1202-JT-4

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**BARNES, Judge**

### Case Summary

J.W. ("Mother") and B.W. ("Father") appeal the termination of their parental rights.  We affirm.

### Issue

Mother and Father each raise one issue, which we restate as whether there is sufficient evidence to support the termination of their parental rights.

### Facts

C.S.W. and B.J.W. were born on September 18, 2010.  The Department of Child Services ("DCS") became involved with the family soon after the children's birth because the hospital staff was concerned about the parents' possible drug impairment.  In October 2010, Mother and Father, who lived in New Castle, entered into an informal adjustment with DCS.  The informal adjustment concluded in April 2011.

In May 2011, a child in need of services ("CHINS") petition was filed alleging that the parents had been involved in an incident of domestic violence, that they were abusing medications and drugs, that Mother was admitted for treatment of suicidal thoughts, and that they had sought protective orders against one another but eventually indicated they wanted to stay together and dismiss the protective orders.  In June 2011, the children were removed from the home when Father, while on bath salts, was found walking around in the rain wearing only his underwear and carrying a hammer.  When

the DCS family case manager went to the home, Mother was impaired and suggested she and Father and been involved in a domestic altercation. The house was in disarray, and C.S.W. had a bump below her eye that was later determined to be a birthmark.

During the CHINS proceeding, Mother and Father participated in some services but did not successfully complete treatment to address their substance abuse or mental health issues. In October 2011, the couple moved to Muncie. On February 29, 2012, DCS filed petitions to terminate the parent-child relationships. After a hearing, the trial court granted the petition. In its order terminating the parent-child relationship, the trial court found in part:[1]

> b.  There is a reasonable probability that:
>
> (1)  the conditions that resulted in the child's removal or the reasons for the placement outside the parent's home will not be remedied in that:
>
> a.  The father self reported to Emily McCall, addictions counselor, a substance abuse history dating back to 2002 which included use of alcohol, marijuana, cocaine, intravenous morphine and bath salts.
>
> b.  The mother self reported to Emily McCall, addictions counselor, a substance abuse history dating back to the age of thirteen (13) which included use of marijuana, cocaine, Percocet, intravenous oxycontin, hallucinogens and intravenous bath salts.

---

[1] These findings specifically relate to B.J.W. The findings relating to C.S.W. are substantially similar.

3

c. Neither mother nor father successfully completed substance abuse treatment or relapse prevention despite two prior referrals in the underlying Child in Need of Services case.

d. The father self reported a history of mental health concerns including bipolar disorder and anxiety.

e. The mother self reported a history of mental health concerns including bipolar disorder, panic disorder and depression.

f. The Father was hospitalized for treatment of suicidal ideation and use of bath salts in October, 2011.

g. The mother was hospitalized for treatment of suicidal ideation on multiple occasions in October, 2011.

h. Neither mother nor father successfully completed individual and/or family counseling to address mental health concerns in New Castle or Muncie as referred in the underlying Child in Need of Services case.

i. The parents have a history of domestic discord and violence and demonstrated a lack of insight into the danger of this volatile relationship by failing to abide by protective orders and Department of Child Services safety plans. Father had an arrest for domestic violence and invasion of privacy. Mother suffered a fractured foot due to domestic violence.

j. Mother and father failed to satisfactorily complete counseling to address domestic violence concerns.

4

and

(2)     continuation of the parent-child relationship poses a threat to the well-being of the child in that:

a.     Mother and father have lengthy substance abuse histories.

b.     Mother and father have self reported mental illness.

c.     Mother and father have a volatile relationship which includes incidents of domestic violence.

d.     Mother and father have failed to complete services or to satisfactorily remedy issues of substance abuse, domestic violence and mental health concerns.

c.     Termination is in the best interest of the child in that:

1.     The child has been removed from the care of his mother and father for ten (10) months, which represents one half of the child's lifetime.

2.     CASA Susan Stamper believes termination is in the child's best interests.

3.     The Department of Child Services believes termination is in the child's best interests.

4.     Mother and father have failed to complete services or to satisfactorily remedy issues of substance abuse, domestic violence and mental health concerns.

d.     The Department of Child Services, Henry County local office, has a satisfactory plan for the care and treatment of the child, which is adoption.

5

Father's App. pp. 54-56.  Mother and Father now appeal.

## Analysis

Mother and Father argue there is not sufficient evidence to support the termination of their parental rights.  "When reviewing the termination of parental rights, we do not reweigh the evidence or judge witness credibility."  In re I.A., 934 N.E.2d 1127, 1132 (Ind. 2010).  We consider only the evidence and reasonable inferences most favorable to the judgment.  Id.  "We must also give 'due regard' to the trial court's unique opportunity to judge the credibility of the witnesses."  Id. (quoting Indiana Trial Rule 52(A)).  Where a trial court enters findings of fact and conclusions thereon, as the trial court did here, we apply a two-tiered standard of review.  Id.  "First, we determine whether the evidence supports the findings, and second we determine whether the findings support the judgment."  Id.  We will set aside the trial court's judgment only if it is clearly erroneous, which occurs if the findings do not support the trial court's conclusions or the conclusions do not support the judgment.  Id.

A petition to terminate a parent-child relationship must allege:

> (A) that one (1) of the following is true:
>
>> (i) The child has been removed from the parent for at least six (6) months under a dispositional decree.
>>
>> (ii) A court has entered a finding under IC 31-34-21-5.6 that reasonable efforts for family preservation or reunification are not required, including a description of the court's finding, the date of the finding, and the manner in which the finding was made.
>>
>> (iii) The child has been removed from the parent and has been under the supervision of a county office of

6

family and children or probation department for at least fifteen (15) months of the most recent twenty-two (22) months, beginning with the date the child is removed from the home as a result of the child being alleged to be a child in need of services or a delinquent child;

(B) that one (1) of the following is true:

(i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.

(ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.

(iii) The child has, on two (2) separate occasions, been adjudicated a child in need of services;

(C) that termination is in the best interests of the child; and

(D) that there is a satisfactory plan for the care and treatment of the child.

Ind. Code § 31-35-2-4(b)(2). DCS has the burden of proving these allegations by clear and convincing evidence. I.A., 934 N.E.2d at 1133.

### I. *Mother*

Without directing us to which conclusions she is specifically challenging, Mother claims "[t]here is no nexus between the trial courts [sic] finding and the need to terminate the relationship. Put another way, termination was not a necessary conclusion to be reached by the evidence." Mother's Br. p. 11. Mother argues that she had participated in services and made progress while participating. Mother also suggests that, given her participation, it was premature to petition to terminate her parental rights and that DCS

7

failed to present evidence of the parents' home, their fitness, or their employment status at the time of the termination hearing.

Mother correctly points out that, in determining whether the conditions that led to a child's removal will not be remedied, the trial court must judge a parent's fitness to care for his or her child at the time of the termination hearing and take into consideration any evidence of changed conditions. In re A.B., 924 N.E.2d 666, 670 (Ind. Ct. App. 2010). "However, the trial court must also 'evaluate the parent's habitual patterns of conduct to determine the probability of future neglect or deprivation of the child.'" Id. (quoting In re J.T., 742 N.E.2d 509, 512 (Ind. Ct. App. 2001), trans. denied). The trial court may consider services offered by the DCS and the parent's response to those services. Id. DCS is not required to rule out all possibilities of change, but only needs to establish that there is a reasonable probability the parent's behavior will not change. Id.

Here, the trial court was presented with evidence that, at the time of the hearing, Mother and Father had obtained housing in Plainfield, Father was working full-time, they appeared to be sober, and the children were safe in a foster home. The trial court was also presented with evidence that DCS first became involved with the family in September 2010, and that although Mother participated in services, she did not successfully complete services provided to her. Carly Lawson, a family case manager, testified about continuing concerns related to both parents' mental health issues, including their suicidal ideations and multiple hospitalizations, and their substance abuse issues. Evidence of domestic disputes between Mother and Father was presented to the trial court.

Mother's challenge to the sufficiency of the evidence is a request to weigh the evidence, which we cannot do. See I.A., 934 N.E.2d at 1132. The clear and convincing evidence of Mother's ongoing mental health and substance abuse issues as well as the incidents of domestic disputes is sufficient evidence to support the termination of her parental rights.

## II. Father

### A. Conditions Resulting in Removal

Father argues that the trial court erroneously concluded that the conditions resulting in the children's removal would not be remedied.[2] Father asserts that he substantially complied with DCS's recommendations and that he was cooperative and making progress in his verbal communications with Mother and his parenting skills training. Father claims that he has taken advantage of the services provided by DCS and that his situation had improved at the time of the hearing.

Although there was evidence that Father participated in services and had been cooperative at times, there was also evidence that he threatened to kill his caseworker and that Father did not successfully complete treatment for his mental health or substance abuse issues. To the extent Father argues otherwise, he is asking us to reweigh the evidence, which we cannot do. See I.A., 934 N.E.2d at 1132.

---

[2] Father also asserts that the evidence does not support the conclusion that the continuation of the parent-child relationship poses a threat to the children's well-being. The current version of the statute required DCS to allege and prove only one of the three factors listed in Indiana Code Section 31-35-2-4(b)(2)(A). See also Bester v. Lake County Office of Family and Children, 839 N.E.2d 143, 148 n.5 (Ind. 2005) (observing that under the prior version of the statute, DCS was required to prove either of the two factors, not both). Thus, we only need to address whether there is a reasonable probability that the conditions that resulted in the children's removal will not be remedied.

9

### B.  Best Interests

Father also argues that the evidence does not establish that the termination of the parent-child relationship is in the children's best interests.  Contrary to Father's argument, Lawson testified that termination was in the children's best interests because Mother and Father had not completed services.  She explained that termination was necessary to provide the children with a permanent home that is "safe and stable, free of substance abuse and domestic violence."  Tr. p. 191.  Similarly, the CASA reported that the children:

> are thriving in a pre-adoptive home that embraces the maternal grandparents and encourages a relationship of blended family.  These are very young children who deserve a stable and safe home free of substance abuse and domestic violence.  It is in their best interest for the parent child relationship to be terminated.

Father's App. p. 53.  This evidence, combined with evidence of substance abuse, mental health issues, and domestic discord, is clear and convincing evidence that termination of the parent-child relationship is in the children's best interests.

### C.  Satisfactory Plan

Father also asserts DCS's plan for adoption "is nothing more than a statement to the effect, and there is no guarantee that that will take place or that the children will even remain together."  Father's Br. pp. 20-21.  For a plan to be "satisfactory," it need not be detailed, so long as it offers a general sense of the direction in which the child will be going after the parent-child relationship is terminated.  See Lang v. Starke County Office of Family and Children, 861 N.E.2d 366, 374 (Ind. Ct. App. 2007), trans. denied.

10

Adoption is generally considered to be a satisfactory plan under the termination of parental rights statute.  See In re B.M., 913 N.E.2d 1283, 1287 (Ind. Ct. App. 2009).

DCS offered evidence that the plan for the children was adoption and that a pre-adoptive home had been identified.  This is clear and convincing evidence supporting the trial court's conclusion that DCS has an adequate plan for the children's care and treatment.

## Conclusion

There is clear and convincing evidence to support the termination of Mother's and Father's parental rights.  We affirm.

Affirmed.

VAIDIK, J., and MATHIAS, J., concur.