913 N.E.2d 1283 (2009)
In the Matter of the Involuntary Termination of the Parent-Child Relationship of B.M. minor child, and M.M., his father,
M.M., Appellant-Respondent,
v.
Indiana Department of Child Services, Appellee-Petitioner.
No. 82A01-0907-JV-322.
Court of Appeals of Indiana.
October 6, 2009.
*1284 Julianne L. Fox, Evansville, IN, Attorney for Appellant.
Mary Jane Humphrey, Department of Child Services, Evansville, IN, Attorney for Appellee.

OPINION
BAKER, Chief Judge.
Appellant-respondent M.M. (Father) appeals the involuntary termination of his parental rights as to his minor son, B.M. Specifically, Father argues that the termination order must be set aside because the trial court failed to consider placing B.M. with his sister in lieu of termination. Concluding that the trial court properly terminated Father's parental rights, we affirm.

FACTS
Father is the biological father of B.M., who was born on August 4, 2003. D.S. (Mother) is B.M.'s biological mother. Mother and Father were married when B.M. was born, but they subsequently divorced and Mother was awarded sole custody.
On January 3, 2006, appellee-petitioner Indiana Department of Child Services, Vanderburgh County (DCS), filed a petition alleging that B.M. was a Child in Need of Services (CHINS). Mother is addicted to cocaine and has relapsed on several occasions when B.M. was in her care. The next day, Father and Mother appeared in court and were advised of their rights. The trial court then determined *1285 that B.M. was a CHINS and B.M. was removed from Mother's custody.
At a dispositional hearing that commenced on February 22, 2006, Mother, who was represented by counsel, appeared and signed a parental participation agreement. Father failed to appear and was defaulted. Thereafter, the trial court issued a dispositional order requiring that both Father and Mother participate in various parenting services that the DCS would provide.
At some point in the fall of 2006, Father began to participate in the court-ordered services with a parent aide. Father was employed through Work One, a temporary employment agency. Thereafter, in February 2007, Father began employment at a McDonald's restaurant. However, in June 2007, Father was arrested on federal charges of conspiracy to distribute cocaine. In November 2007, B.M. was returned to Mother's care. Father was subsequently convicted of the charged offense and incarcerated pending the sentencing hearing. The DCS again removed B.M. from Mother's care in April 2008.
On August 5, 2008, the DCS filed a petition to terminate the parental rights of both parents. At the termination hearing that commenced on December 15, 2008, Mother failed to appear. The evidence showed that although Mother was provided with multiple opportunities to complete services for her cocaine addiction, she was not able to stop using the drug for any significant period of time.
Father testified by telephone and was represented by counsel. Father testified that he anticipates receiving a sentence of "twenty [years] to life," and that the sentencing hearing was set for March 13, 2009. Tr. p. 29. Father claimed that until March 2008, he spoke with B.M. every other day by telephone while he was incarcerated.
Father also testified that he did not initially become involved in the matter because he believed that B.M. would be returned to Mother's care. Indeed, the evidence established that Father ceased contact with the DCS and B.M. from May 2006 through September 2006. A DCS caseworker indicated that she had been unable to contact Father during that time.
Father also testified that his sister, B.R., who resides in Peoria, Illinois, was willing to care for B.M. However, Mother did not consent to such an arrangement because she anticipated that B.M. would ultimately be returned to her care. Father did not make any request during the CHINS matter to have B.M. placed with his sister. Moreover, no one contacted B.R. about the suggested arrangement, B.R. never appeared in court, and there is no evidence indicating that B.R. made any effort to have B.M. placed with her at any point during the proceedings.
The Court Appointed Special Advocate (CASA) testified that terminating Father's parental rights was in B.M.'s best interests. The DCS case manager testified that she offered Father many services, including drug screens, supervised visits with B.M., and anger management classes. Father either cancelled many of the visitations or did "not show up." Id. at 44. The case manager also explained that Father did not cooperate with the drug screens that were offered. The case manager testified that she was unaware of any possible placement of B.M. with Father's sister until the day of the termination hearing. Finally, the case manager did not believe that it would be in B.M.'s best interest for him to be "reunified" with Father or Mother. Id. at 52.
Following the hearing, the trial court issued findings of facts and conclusions of *1286 law terminating Mother and Father's parental rights as to B.M. In relevant part, the order provided that
6. The Court now finds by clear and convincing evidence that the allegations of the petition to terminate parental rights are true in that:
b. There is a reasonable probability that the conditions that resulted in the removal of [B.M.] from, and continued placement outside the care and custody of [Mother] and [Father] will not be remedied.
c. There is reasonable probability that the continuation of the parent-child relationship between [Father] and [Mother] and their child [B.M.] poses a threat to the well-being of [B.M.].
d. Termination of the parent-child relationship between [Father] and his child, [B.M.], is in the child's best interests.
e. Termination of the parent-child relationship between [Mother] and her child, [B.M.] is in the child's best interests.
f. The plan of the Department of Child Services for the care and treatment of [B.M.] upon termination of her parental rights is adoption, which is acceptable and satisfactory.
Appellant's App. p. 3-4. Father now appeals.[1]

DISCUSSION AND DECISION
Father's sole contention on appeal is that the order terminating his parental rights with regard to B.M. must be set aside because the trial court failed to consider placing B.M. with Father's sister as an alternative to termination.
As Father correctly points out, a parent's interest in the care, custody, and control of his or her children is "`perhaps the oldest of the fundamental liberty interests.'" In re G.Y., 904 N.E.2d 1257, 1259 (Ind.2009) (quoting Troxel v. Granville, 530 U.S. 57, 65, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000)). Moreover, the parent-child relationship is "one of the most valuable relationships in our culture." In re G.Y., 904 N.E.2d at 1259. The involuntary termination of parental rights is the most severe action that a juvenile court can take. Stone v. Daviess County Div. of Children & Family Servs., 656 N.E.2d 824, 828 (Ind.Ct.App.1995).
On the other hand, parental interests are not absolute and must be subordinated to the child's interests in determining the proper disposition of a petition to terminate parental rights. Bester v. Lake County Office of Family & Children, 839 N.E.2d 143, 147 (Ind.2005). Thus, "`[p]arental rights may be terminated when the parents are unable or unwilling to meet their parental responsibilities.'" Id. (quoting In re D.D., 804 N.E.2d 258, 265 (Ind.Ct.App.2004)). The purpose of termination of parental rights is not to punish parents, but to protect children. In re L.S., 717 N.E.2d 204, 208 (Ind.Ct. App.1999).
We note that in termination proceedings, the trial court should judge a parent's fitness to care for the children as of the time of the termination proceedings, taking into consideration changed conditions and the parent's habitual pattern of conduct. In re V.A., 632 N.E.2d 752, 756 (Ind.Ct.Ap.1994). Additionally, the trial court must examine the patterns of conduct in which the parent has historically engaged in order to determine if future changes are likely to occur. In re D.L., *1287 814 N.E.2d 1022, 1028 (Ind.Ct.App.2004). The time for parents to rehabilitate themselves "is during the CHINS process, prior to the filing of the petition for termination." Prince v. Dep't of Child Servs., 861 N.E.2d 1223, 1230 (Ind.Ct.App.2007) (emphasis in original).
Indiana Code section 31-35-2-4(b)(2) provides that a petition to terminate a parent-child relationship involving a child in need of services must allege that:
(A) one (1) of the following exists:
(i) the child has been removed from the parent for at least six (6) months under a dispositional decree;
(ii) a court has entered a finding under IC XX-XX-XX-X.6 that reasonable efforts for family preservation or reunification are not required, including a description of the court's finding, the date of the finding, and the manner in which the finding was made; or
(iii) the child has been removed from the parent and has been under the supervision of a county office of family and children for at least fifteen (15) months of the most recent twenty-two (22) months;
(B) there is a reasonable probability that:
(i) the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied; or
(ii) the continuation of the parent-child relationship poses a threat to the well-being of the child;
(C) termination is in the best interests of the child; and
(D) there is a satisfactory plan for the care and treatment of the child.

(Emphasis added). The DCS must prove its allegations by clear and convincing evidence. Egly v. Blackford County Dep't of Pub. Welfare, 592 N.E.2d 1232, 1234 (Ind. 1992).
Father directs us to Indiana Code section 31-34-6-2 in support of his contention that the trial court was required to consider placing B.M. with his sister as an alternative to termination:
A juvenile court or the department shall consider placing a child alleged to be a child in need of services with an appropriate family member of the child before considering any other placement for the child.
(Emphasis added). Notwithstanding Father's contention, we note that he is not appealing the trial court's adjudication that B.M. was a CHINS. Thus, Indiana Code section 31-34-6-2 does not apply. Moreover, as set forth in Indiana Code section 31-35-2-4(b)(2)(D), the DCS is only required to establish that "there is a satisfactory plan for the care and treatment of the child" in termination proceedings. And this court has held that adoption is a "satisfactory plan" for the care and treatment of a child under the termination of parental rights statute. In re A.N.J., 690 N.E.2d 716, 722 (Ind.Ct.App.1997).
In this case, the DCS caseworker testified at the termination hearing that B.M. has been living with his godparents "for about a year," and that the DCS's plan for B.M. is adoption. Tr. p. 42. Because the DCS established a plan for B.M.'s adoption, Father's contention that the trial court erred in failing to consider B.M.'s placement with B.R. as an alternative to terminating Father's parental rights also fails on this basis.
The judgment of the juvenile court is *1288 affirmed.[2]
FRIEDLANDER, J., and RILEY, J., concur. *1289
NOTES
[1] Mother is not a party to this appeal.
[2] As an aside, we note that while Father does not challenge the trial court's order terminating his parental rights on any additional ground, our review of the record supports the trial court's determination that the DCS presented clear and convincing evidence in support of its allegations under Indiana Code section 31-35-2-4 to terminate Father's parental rights as to B.M.