**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Sep 16 2014, 8:57 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**STEVEN J. HALBERT**
Carmel, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ROBERT J. HENKE**
**CHRISTINA D. PACE**
Deputies Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| IN THE MATTER OF THE TERMINATION OF THE PARENT-CHILD RELATIONSHIP OF: K.B. (MINOR CHILD) AND W.B. (MOTHER), Appellant-Respondent, | ) ) ) ) ) |
| vs. | ) No. 49A05-1402-JT-63 |
| THE INDIANA DEPARTMENT OF CHILD SERVICES, Appellee-Petitioner. | ) ) ) ) |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Marilyn A. Moores, Judge
The Honorable Larry E. Bradley, Magistrate
Cause No. 49D09-1307-JT-16119

**September 16, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BAILEY, Judge**

## Case Summary

W.B. ("Mother") appeals from the termination of her parental rights as to her daughter, K.B. We affirm.

## Issue

Mother presents one issue for our review, which we restate as whether the Department of Child Services ("DCS") satisfied its statutory burden of proof as to termination of Mother's parental rights.

## Facts and Procedural History

K.B. was born to Mother and J.R. ("Father") on March 15, 2004. In 2010, K.B. was found to be a Child in Need of Services ("CHINS"). At the conclusion of the first CHINS case, K.B. was placed in Father's custody. After allegations arose that Father had molested K.B., a second CHINS proceeding was initiated in 2011 and K.B. was again adjudicated as a CHINS. At the end of the second CHINS case in May 2012, K.B. was placed back into Mother's custody.

On July 19, 2012, K.B. was difficult to wake up, and was transported by ambulance to a hospital. K.B. revealed that Mother had been making K.B. take excessive amounts of prescription medication, and that Mother routinely took excessive amounts of medication that caused her to go to sleep. K.B. was removed from Mother's home.

On July 23, 2012, a CHINS petition was filed, and K.B. was adjudicated as a CHINS. Mother was offered and verbally accepted referrals to services for home-based case

management, home-based therapy, supervised visits with K.B., random drug screens, and a substance abuse assessment. Mother only exercised supervised visitation.

On September 5, 2012, Mother was charged with two counts of Neglect of a Dependent and one count of Dealing in Narcotics. On March 19, 2013, Mother was convicted of two counts of Neglect of a Dependent, and was sentenced to an aggregate term of imprisonment of eight years. As part of the criminal proceedings, a no-contact order was put into place as to Mother and K.B. Mother had no subsequent contact of any kind with K.B. Mother remained incarcerated throughout the remainder of the CHINS proceedings.

On July 25, 2013, DCS filed its petition to terminate Mother's parental rights as to K.B. An evidentiary hearing was conducted on December 18, 2013 and January 10, 2014.

On January 17, 2014, the termination court entered its order terminating Mother's parental rights. This appeal ensued.

### Discussion and Decision

Mother appeals the termination of her parental rights. Our standard of review is highly deferential in such cases. In re K.S., 750 N.E.2d 832, 836 (Ind. Ct. App. 2001). This Court will not set aside the trial court's judgment terminating a parent-child relationship unless it is clearly erroneous. In re A.A.C., 682 N.E.2d 542, 544 (Ind. Ct. App. 1997). When reviewing the sufficiency of the evidence to support a judgment of involuntary termination of a parent-child relationship, we neither reweigh the evidence nor judge the credibility of the witnesses. Id. We consider only the evidence that supports the judgment and the reasonable inferences to be drawn therefrom. Id.

3

Parental rights are of a constitutional dimension, but the law provides for the termination of those rights when the parents are unable or unwilling to meet their parental responsibilities. Bester v. Lake Cnty. Office of Family & Children, 839 N.E.2d 143, 147 (Ind. 2005). The purpose of terminating parental rights is not to punish the parents, but to protect their children. In re L.S., 717 N.E.2d 204, 208 (Ind. Ct. App. 1999), trans. denied.

Indiana Code section 31-35-2-4(b)(2) sets out the elements that DCS must allege and prove by clear and convincing evidence in order to terminate a parent-child relationship:

(A) That one (1) of the following is true:

    (i)    The child has been removed from the parent for at least six (6) months under a dispositional decree.

    (ii)    A court has entered a finding under IC 31-34-21-5.6 that reasonable efforts for family preservation or reunification are not required, including a description of the court's finding, the date of the finding, and the manner in which the finding was made.

    (iii)    The child has been removed from the parent and has been under the supervision of a county office of family and children for at least fifteen (15) months of the most recent twenty-two (22) months, beginning with the date the child is removed from the home as a result of the child being alleged to be a child in need of services or a delinquent child;

(B) That one (1) of the following is true:

    (i)    There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.

    (ii)    There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.

    (iii)    The child has, on two (2) separate occasions, been adjudicated a child in need of services;

(C) that termination is in the best interests of the child; and

(D) that there is a satisfactory plan for the care and treatment of the child.

If the court finds that the allegations in a petition described in Section 4 of this chapter are true, the court shall terminate the parent-child relationship. Ind. Code § 31-35-2-8(a). A trial court must judge a parent's fitness to care for his or her child at the time of the termination hearing, taking into consideration evidence of changed conditions. In re J.T., 742 N.E.2d 509, 512 (Ind. Ct. App. 2001), trans. denied. The trial court also must "evaluate the parent's habitual patterns of conduct to determine the probability of future neglect or deprivation of the child." Id. Courts have properly considered evidence of a parent's prior criminal history, drug and alcohol abuse, history of neglect, failure to provide support, and lack of adequate housing and employment. A.F. v. Marion Cnty. Office of Family & Children, 762 N.E.2d 1244, 1251 (Ind. Ct. App. 2002), trans. denied.

On appeal, Mother contends that DCS did not carry its burden of proving by clear and convincing the requirements of subsection 31-35-2-4(b)(2)(B)(ii), which requires that the court find there is a reasonable probability that continuation of the parent-child relationships poses a threat to the well-being of the child. The statute "is written in the disjunctive" so that only one of the requirements of subsection (B)—which include either that there is a reasonable probability the conditions necessitating a child's removal will not be remedied or that continuation of the parent-child relationship poses a threat to the child's well-being— need be proven by clear and convincing evidence. In re L.S., 717 N.E.2d at 209.

Prior to the instant proceedings, Mother had been convicted of welfare fraud. After K.B. was adjudicated a CHINS in July 2012, Mother was incarcerated during all but two

months of the instant case. During the termination hearing, Mother testified that she had been addicted to pain medications for eight or nine years, had never sought treatment, and increased her use of pain medications "twenty or thirty times" after the 2010 CHINS proceeding. (Tr. at 17.) Mother acknowledged having overdosed twice and that she would have died had K.B. not called for help. Mother stated that K.B. was more of a mother to her than she was to K.B., and that for two years K.B. protected her from routine domestic abuse at the hands of one of Mother's boyfriends.

Mother testified that she would be released from prison in 2014 in order to begin serving a portion of her prison term through work release with community corrections. However, she acknowledged that it could take as much as a year for her to obtain a job and housing suitable for herself and K.B., and testified that she would first need to address her addiction and stress issues before she could provide any kind of parenting for K.B. Further, Mother testified that though she wanted continued contact with K.B., she would accede to plans for K.B. to be adopted, and said that K.B. should not be removed from a "good life" to wait for Mother to address her own problems. (Tr. at 29.)

Mother's testimony accords with the testimony of several social workers and therapy providers, all of whom testified that K.B. needed a safe and stable home environment after being diagnosed with post-traumatic stress disorder. Mother directs us to cases in which Indiana courts have concluded that continuation of the parent-child relationship did not pose a threat to the well-being of the child. Yet this case is readily distinguished based upon Mother's lack of action to arrange for employment or housing suitable for herself and K.B.

6

and the risk, given lack of prior rehabilitative behavior, that Mother would reoffend after release from imprisonment. See, e.g., In re G.Y., 904 N.E.2d 1257, 1262 (Ind. 2009). Accordingly, we cannot conclude that DCS failed to carry its burden as to the requirement that it prove by clear and convincing evidence that continuation of the parent-child relationship likely posed a threat to K.B.'s well-being.

Mother also contends that DCS failed to carry its burden of proving that there was a satisfactory plan in place for the care and treatment of K.B. See I.C. § 31-35-2-4(b)(2)(D). Such a plan need not be detailed, so long as it offers a general sense of the direction in which the child will be going after the parent-child relationship is terminated. In re Termination of Parent-Child Relationship of D.D., 804 N.E.2d 258, 268 (Ind. Ct. App. 2004), trans. denied. This Court has held that adoption is a satisfactory plan for the care and treatment of a child under the termination of parental rights statute. In re B.M., 913 N.E.2d 1283, 1287 (Ind. Ct. App. 2009).

Here, DCS established that the plan for K.B. was adoption. Mother contends that the adoptive placement chosen is inadequate because it is a different family from the one that served as K.B.'s foster family during much of the remainder of the case, and the prospective adoptive family did not testify during the termination hearing. However, testimony from DCS caseworkers and K.B.'s Guardian Ad Litem indicates that the prospective adoptive family is committed to adopting K.B. and has asked sensitive and appropriate questions about K.B., and K.B. has expressed her desire to remain with that family and to be adopted. We

7

thus conclude that DCS carried its burden to prove by clear and convincing evidence that a satisfactory plan for K.B.'s care and treatment was in place.

## Conclusion

DCS carried its burden of establishing by clear and convincing evidence that there was a reasonable probability that continuing the parent-child relationship would be harmful to K.B., and that the plan for K.B.'s care and treatment was satisfactory.

Affirmed.

NAJAM, J., and PYLE, J., concur.