Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.

ATTORNEY FOR APPELLANT:

**AMY KAROZOS**
Greenwood, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ROBERT J. HENKE**
**DAVID E. COREY**
Deputy Attorneys General
Indianapolis, Indiana



FILED

Oct 22 2014, 9:51 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

IN THE MATTER OF THE )
INVOLUNTARY TERMINATION OF THE )
PARENT-CHILD RELATIONSHIP OF )
N.D., J.G., and S.D. (Minor Children) and )
)
S.D. (Mother), )
)
    Appellant-Respondent, )
)
        vs. )    No. 49A02-1402-JT-125
)
INDIANA DEPARTMENT OF CHILD )
SERVICES, )
)
    Appellee-Petitioner. )

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Marilyn Moores, Judge
The Honorable Larry Bradley, Magistrate
Cause Nos. 49D09-1303-JT-11681, 49D09-1303-JT-11682, and 49D09-1303-JT-11683

**October 22, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**CRONE, Judge**

**Case Summary**

S.D. ("Mother") appeals a trial court judgment terminating her parental relationship with her minor children N.D., J.G., and S.D. (collectively "the children"). Finding the evidence sufficient to support the trial court's determination, we affirm.

**Facts and Procedural History[1]**

The facts most favorable to the judgment indicate that on October 3, 2011, Mother gave birth to S.D., who tested positive for opiates at birth. Mother had two older children, N.D. and J.G. (born in 2006 and 2009 respectively), who were in the care of relatives. On November 11, 2011, the Department of Child Services ("DCS") received a report concerning S.D.'s positive opiates test and failure to thrive. S.D. was placed with his paternal grandparents, and N.D. and J.G. were placed in foster care. On November 15, 2011, DCS filed a petition alleging that the children were children in need of services ("CHINS") based on Mother's unstable housing, her inability to care for S.D. when he tested positive for opiates at birth, and her failure to provide accurate information concerning N.D. and J.G.[2]

---

[1] Four fathers were involved in proceedings concerning the children. J.G.'s father was the subject of the same termination order as Mother; S.D.'s father consented to adoption and was thereafter granted dismissal; and two others (one legal and one putative father of N.D.) were the subjects of separate termination orders. Because none of the fathers are part of this appeal, we address only the trial court's findings pertaining to Mother.

[2] When DCS ordered Mother to bring N.D. and J.G. to DCS offices to be placed in foster care, she said that they were in Missouri at her mother's home, when in fact they were in Lebanon, Indiana, at her grandfather's home.

In February 2012, Mother admitted to the allegations in the CHINS petition. At a March 2012 dispositional hearing, the children were made wards of DCS, and the trial court ordered Mother to maintain appointments with DCS and the guardian ad litem ("GAL"); maintain safe and stable housing; secure and maintain a legal and stable source of income; refrain from using illegal controlled substances; take medications only as prescribed; submit to random drug screens; complete a parenting assessment; participate in home-based counseling; consent to release of psychiatric records; and attend scheduled visitation sessions with the children. The court later ordered her to complete a substance abuse assessment.

In March 2013, DCS filed a petition to terminate Mother's parental relationship with the children, changing the permanency plan to adoption by paternal grandparents (S.D.) and by the pre-adoptive foster parents (N.D. and J.G.). The trial court conducted evidentiary hearings and issued an order terminating Mother's parental rights. In its findings, the trial court emphasized Mother's pattern of instability in the areas of housing, employment, and personal relationships, her inconsistency in attending visitation sessions, her mental health and substance abuse issues, and her failure to complete many of the required services.

Mother now appeals. Additional facts will be provided as necessary.

### Discussion and Decision

Mother challenges the sufficiency of evidence to support the trial court's judgment terminating her parental relationship with the children. When reviewing a trial court's findings of fact and conclusions thereon in a case involving the termination of parental rights, we review for clear error, applying a two-tiered standard of review wherein we first

3

determine whether the evidence supports the findings and then whether the findings support the judgment. *In re M.W.*, 943 N.E.2d 848, 853 (Ind. Ct. App. 2011), *trans. denied*. We will set aside the trial court's judgment only if it is clearly erroneous. *Bester v. Lake Cnty. Office of Family & Children*, 839 N.E.2d 143, 147 (Ind. 2005). We neither reweigh evidence nor judge witness credibility. *In re A.I.*, 825 N.E.2d 798, 805 (Ind. Ct. App. 2005), *trans. denied*. Rather, we consider only the evidence and inferences most favorable to the judgment. *Id.*

In *Bester*, our supreme court stated,

> The Fourteenth Amendment to the United States Constitution protects the traditional right of parents to establish a home and raise their children. A parent's interest in the care, custody, and control of his or her children is perhaps the oldest of the fundamental liberty interests. Indeed the parent-child relationship is one of the most valued relationships in our culture. We recognize of course that parental interests are not absolute and must be subordinated to the child's interests in determining the proper disposition of a petition to terminate parental rights. Thus, parental rights may be terminated when the parents are unable or unwilling to meet their parental responsibilities.

*Id.* (citations, quotation marks, and alteration omitted).

To obtain a termination of the parent-child relationship between Mother and the children, DCS was required to establish:

(A)   that one (1) of the following is true:

(i) The child has been removed from the parent for at least six (6) months under a dispositional decree.

(ii) A court has entered a finding under IC 31-34-21-5.6 that reasonable efforts for family preservation or reunification are not required, including a description of the court's finding, the date of the finding, and the manner in which the finding was made.

(iii) The child has been removed from the parent and has been under the supervision of a county office of family and children or probation

4

department for at least fifteen (15) months of the most recent twenty-two (22) months, beginning with the date the child is removed from the home as a result of the child being alleged to be a child in need of services or a delinquent child;

(B)     that one (1) of the following is true:

(i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.

(ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.

(iii) The child has, on two (2) separate occasions, been adjudicated a child in need of services;

(C)     that termination is in the best interests of the child; and

(D)     that there is a satisfactory plan for the care and treatment of the child.

Ind. Code § 31-35-2-4(b)(2).

In recognition of the seriousness with which we address parental termination cases, Indiana has adopted a clear and convincing evidence standard. Ind. Code § 31-37-14-2; *Castro v. State Office of Family & Children,* 842 N.E.2d 367, 377 (Ind. Ct. App. 2006), *trans. denied*. "Clear and convincing evidence need not reveal that the continued custody of the parents is wholly inadequate for the child's survival. Rather, it is sufficient to show by clear and convincing evidence that the child's emotional and physical development are threatened by the respondent parent's custody." *In re K.T.K.*, 989 N.E.2d 1225, 1230 (Ind. 2013) (citation omitted).

When assessing whether there is a reasonable probability that conditions that led to a child's removal will not be remedied, we must consider not only the initial basis for the

5

child's removal, but also the bases for continued placement outside the home. *A.I.*, 825 N.E.2d at 806. Moreover, "the trial court should judge a parent's fitness to care for [her] children at the time of the termination hearing, taking into consideration evidence of changed conditions." *In re J.T.*, 742 N.E.2d 509, 512 (Ind. Ct. App. 2001), *trans. denied*. "Due to the permanent effect of termination, the trial court also must evaluate the parent's habitual patterns of conduct to determine the probability of future neglect or deprivation of the child." *Id*. For example, the court may properly consider evidence of a parent's substance abuse, criminal history, lack of employment or adequate housing, history of neglect, and failure to provide support. *McBride v. Monroe Cnty. Office of Family & Children*, 798 N.E.2d 185, 199 (Ind. Ct. App. 2003). In making its case, "DCS need not rule out all possibilities of change; rather, [it] need establish only that there is a reasonable probability that the parent's behavior will not change." *In re Kay.L.*, 867 N.E.2d 236, 242 (Ind. Ct. App. 2007). "[A] trial court need not wait until a child is irreversibly influenced by a deficient lifestyle such that his or her physical, mental, and social growth is permanently impaired before terminating the parent-child relationship." *Castro*, 842 N.E.2d at 372.

Here, the trial court's findings include the following:[3]

5. CHINS petitions were filed on the children on November 15, 2011 … based on allegations that S.D. was born opiate positive, that Mother lacked stable housing and appeared unable to take care of S.D.

    ….

---

[3] Throughout the findings, the trial court refers to Mother and the children by their proper names. We refer to them as Mother, N.D., J.G., and S.D.

6

7. The children were ordered detained outside the home at the Initial Hearing held on November 15, 2011.

8. The children were found to be in need of services as to their mother on February 27, 2012, after admitting that S.D. tested positive for opiates at birth and she had not demonstrated to medical professionals' satisfactions the ability to appropriately feed and care for S.D.

….

17. Services were ordered and referred for Mother toward reunification.

18. Mother completed a substance abuse assessment and urine screens.

19. Mother completed one of the two parenting assessment sessions. The assessor could not get in contact with Mother to complete the assessment.

20. Home based therapy commenced in March of 2012 to address mental and emotional issues, parenting skills. This referral closed as unsuccessful in November of 2012 due to Mother not showing or canceling sessions.

21. Mother's mental issues included depression and anxiety. Her emotional issues to be addressed included impulse control and behavior management, and positive coping skills.

22. At the time the therapy referral closed, no progress was made on goals due to inconsistent sessions.

23. Around the time therapy services were closed, Mother informed the therapist that she was done with services and visits and she was going to Kansas City.

24. The therapist could not recommend placement of the children back with Mother, there being some issues in parenting skills and Mother having to take care of three children at once.

25. A subsequent home based therapy referral ended in March of 2013 as unsuccessful, also due to Mother being inconsistent.

7

26. Mother has had unstable housing, living in several places during the CHINS case including outside of Indiana. She has lived with family, friends, and fiancées [sic] and in hotels.

27. On the first day of trial in this matter, Mother was not interested in a lease because she wanted to leave Indiana with her children. On the second day, she and her current fiancée [sic] were looking for places to rent, and staying part-time with her grandfather. The fiancée [sic] was in the process of moving to Indiana.

28. Mother has had unstable employment, relying on others to support her. Her last job was approximately three months prior to the first day of trial in this matter as an entertainer two nights in Florida.

29. Mother's mental health issue presents as a major problem. She goes to stress centers when needed and was told she needed to be inpatient shortly before trial in this matter. On the second day of trial she testified her mental health issues were being addressed by her gastroenterologist.

30. Mother's mental health issues may be keeping her from realizing what needs to be addressed before reunification can happen. This is apparent in her testimony that she was forced to admit to the CHINS, her children were never in need of services, and that home based providers "quit on her".

31. Visitation between the children and Mother was suspended by the CHINS Court in June of 2013. Providers never recommended unsupervised visitation during the CHINS case.

32. There is a reasonable probability that the conditions that resulted in the children's removal and continued placement outside the home will not be remedied by Mother given the lack of progress in services between the filing of the CHINS action in November 2011 to the change of the permanency plan to adoption on March 21, 2013, and Mother's lack of insight.

….

34. N.D. and J.G. have remained in the same foster home since their removal on [sic] November of 2011. This home is pre-adoptive and the

8

children have been observed as being bonded with their caregivers. The environment provides structure which is important for N.D.

35.    S.D. is placed with his paternal grandmother who is wishing to adopt him. He is bonded and he visits his two siblings.

36.    Termination of the parent-child relationship is in the best interests of the children. Termination would allow the children to obtain permanency in the homes they have become accustomed to, and where their needs will be safely met…. Although Mother loves her children and has a bond with N.D. and J.G., she has been unable to make the needed progress in services to have unsupervised visitation in the ample time given.

Appellant's App. at 121-24.

Mother asserts that the evidence is insufficient to support the trial court's conclusion that a reasonable probability exists that the conditions that led to the children's removal will not be remedied.[4] She challenges Findings 19, 21, 22, and 28-30 as clearly erroneous. With respect to Finding 19, she asserts that she did not complete the second parenting assessment because her then-fiancé called the sheriff and kicked her out of his home during the interview phase of the second assessment. She claims that when this occurred, the home-based therapist told her that she did not need to complete the second assessment due to its overlap with the psychological evaluation. Tr. at 137. Even so, the record shows that despite the overlap, Mother failed to complete many of the overlapping services. Findings 21, 22, 29, and 30 concern Mother's mental health issues. While she claims that Findings 21 and 22

---

[4] Mother also challenges the trial court's conclusion that there is a reasonable probability that the continuation of her relationship with the children poses a threat to their well-being. Indiana Code Section 31-35-2-4(b)(2)(B) requires DCS to prove only *one* of the three circumstances listed. Because we find no error concerning the reasonable probability of unremedied conditions, we need not address the threat to the children's well-being.

9

both are clearly erroneous, her challenge essentially addresses the portion of Finding 22 stating that she made no progress on her goals due to inconsistent attendance at sessions. She admits that her therapy services were closed due to her nonattendance, but she now asserts that the reason for her lack of progress was that the providers were social workers, not psychologists or psychiatrists. However, she never complained that the therapists were unqualified and instead, simply chose not to attend. "If the parent feels the services ordered by the court are inadequate to facilitate the changes required for reunification, then the onus is on the parent to request additional assistance from the court or DCS." *Prince v. Dep't of Child Servs.*, 861 N.E.2d 1223, 1231 (Ind. Ct. App. 2007).

With respect to Findings 29 and 30, Mother challenges the trial court's determination that her mental health issues amounted to a major problem that kept her from realizing the issues that she needed to address before reunification could happen. The record shows that Mother was not forthcoming with respect to her psychological records. For example, when DCS requested that Mother sign a release form to contact her psychiatrist, she delayed and signed the release only when she was no longer a patient there and was allegedly seeing another psychiatrist. Finding 30 encapsulates the trial court's concern that Mother's actions throughout the proceedings indicated that she was not facing up to her own issues and their effect on the children and that she instead diverted blame to DCS when services were closed due to her own failures. She admitted to the CHINS determination, but later said that she was forced to do so and that she never thought her children were in need of services.

Mother also challenges Finding 28, which characterizes her employment as unstable and notes that she relies on others for financial support. At the termination hearing, she admitted that her third fiancé supports her, but testified that she had a twelve-year history as a dancer. In this vein, we note that the trial court's focus was not on the duration of her dancing career, but rather on the frequency of her recent dancing jobs, that is, "Her last job was approximately three months prior to the first day of trial in this matter as an entertainer two nights in Florida." Appellant's App. at 44. Also notable is that she failed to provide any verification of income to DCS as requested.

In short, most of Mother's challenges implicate the weight assigned to her mental health and employment issues. We decline her invitations to reweigh evidence, which we may not do. The extensive unchallenged findings paint a portrait of a parent who is either unable or unwilling to address her own personal challenges, let alone her obligations attendant to parenting. She has a pattern of unstable adult relationships, having named four men as legal or putative fathers of her three children and having had three fiancés. Likewise, her housing has consisted of numerous stints in hotels, living with friends, relatives, and fiancés, and moving from state to state for short periods of time, often without informing DCS of her whereabouts. Her employment has been spotty at best, and she was not forthcoming when it came to income verification. Her inconsistent attendance and tardiness for scheduled visitation sessions with the children is indicative of her scattered, undisciplined approach to obligations. Simply put, she has failed to demonstrate clear error in the trial

11

court's determination that there is a reasonable probability that the conditions that led to removal will not be remedied.[5]

Mother also challenges the trial court's conclusion that termination of her parental relationship with the children is in the children's best interests. Again, we recognize her fundamental liberty interests in parenting the children, but we are also mindful that her parental interests are not absolute, must be subordinated to the children's interests, and may be terminated if she is unable or unwilling to meet her parental responsibilities. *In re G.Y.*, 904 N.E.2d 1257, 1259-60 (Ind. 2009). Although not dispositive, permanency and stability are key considerations in determining the best interests of a child. *Id*. at 1265. A determination of a child's best interests should be based on the totality of the circumstances. *In re A.P.*, 981 N.E.2d 75, 84 (Ind. Ct. App. 2012).

While Mother couches her argument in terms of the children's best interests, she essentially objects to their permanency plans, arguing that the children should all be placed with her mother. In doing so, she conflates two separate points of inquiry under the termination statute. The determination of the children's best interests requires an evaluation of how Mother's personal and parenting issues impact the children's best interests.

---

[5] In the statement of facts section of her brief, Mother claims, "The record does not show whether DCS developed a case plan with [Mother]." Appellant's Br. at 7. Indiana Code Section 31-34-15-1 requires that DCS develop a case plan for every CHINS. If Mother's assertion is accurate, "we caution DCS to be more cognizant of the statutory framework by which it is to abide, which includes providing a case plan to each parent." *C.A. v. Indiana Dep't of Child Servs.*, 15 N.E.3d 85, 93. Notably, however, Mother failed to raise the procedural irregularity either during the termination proceedings below or in the argument section of her brief. Thus, she has waived the issue for consideration by this Court. *Runkel v. Miami Cnty. Dep't of Child Servs.*, 875 N.E.2d 369, 373 (Ind. Ct. App. 2007), *trans. denied*; Ind. Appellate Rule 46(A)(8). Waiver notwithstanding, even if a case plan was not developed, both Mother's brief and the record of proceedings indicate that Mother was aware of the services that she was required to complete as part of the CHINS order.

However, with respect to the permanency plan, the statute only requires DCS to establish that there is "a satisfactory plan for the care and treatment of the child." Ind. Code § 31-35-2-4(b)(2)(D). "[A]doption is a 'satisfactory plan' for the care and treatment of a child under the termination of parental rights statute." *In re B.M.*, 913 N.E.2d 1283, 1287 (Ind. Ct. App. 2009). Although issues such as permanency and stability are generally considered in both inquiries, the satisfactory plan inquiry does not require that the trial court adopt the parent's view concerning *which placement* is best for which child. *See In re B.M.*, 913 N.E.2d 1283, 1287 (Ind. Ct. App. 2009) (finding no clear error where DCS established plan for adoption by godparents rather than taking father's recommendation of placement with his sister as guardian). The trial court addressed this issue specifically when it denied Mother's request for placement with the maternal grandmother.

Neither the foster parents' adoption of N.D. and J.G. nor the paternal grandmother's adoption of S.D. runs afoul of the "satisfactory plan" requirement found in the statute. To the extent that these placements implicate best interests, they are not analyzed in comparison with other possible placements. Rather, the analysis concerns whether termination of Mother's rights is in the children's best interests. With respect to S.D., the record is replete with evidence that he never bonded with Mother, having been born with opiates in his system and immediately removed from Mother for placement outside the home. As for N.D. and J.G., the record indicates that they had developed a bond with Mother before they were removed from her care. However, Mother's sporadic attendance at visitation sessions caused the children, especially N.D., to suffer anxiety. In contrast, the foster parents, with whom

13

N.D. and J.G. have resided since November 2011, provide a structured and stable environment, and the record shows that N.D. and J.G. have developed a bond with them.

Moreover, both the DCS family case manager and the GAL testified that termination is in the children's best interests. Given the trial court's discretion to determine the credibility of witnesses, we cannot say that the trial court erred in giving credence to the professional opinions regarding the children's best interests. *See In re A.K.*, 924 N.E.2d 212, 224 (Ind. Ct. App. 2010) ("the testimony of service providers may support a finding that termination is in the child's best interests."), *trans. dismissed*.

In sum, Mother has a pattern of instability that has continued for many years and has manifested itself in many areas, including housing, employment, and personal relationships. Her lack of personal discipline has manifested itself negatively in her parenting and does not bode well for her future parenting prospects. Throughout the proceedings, she was inconsistent in her participation and failed to complete most of the services outlined in the participation plan. The most troubling indicator of her parenting prospects was her poor attendance at visitation sessions. Her arguments concerning the children's best interests are more aptly characterized as attempts to dictate their placement. Based on the foregoing, we conclude that Mother has failed to establish clear error in the trial court's decision to terminate her parental relationship with the children. Consequently, we affirm.

Affirmed.

RILEY, J., and MATHIAS, J., concur.