## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Feb 28 2017, 9:14 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Andrew W. Foster
Wagoner, Ayer, Hargis & Rudisill, LLC
Rockport, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Robert J. Henke
James D. Boyer
Deputy Attorneys General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In re the Termination of the Parent-Child Relationship of:

W.H. *(Minor Child)*

and

G.H. *(Mother)* & D.H. *(Father)*,

*Appellants-Respondents,*

v.

The Indiana Department of Child Services,

*Appellee-Petitioner.*

February 28, 2017

Court of Appeals Case No.
74A01-1606-JT-1553

Appeal from the Spencer Circuit Court

The Honorable Jonathan A. Dartt, Judge

Trial Court Cause No.
74C01-1509-JT-255

**Robb, Judge.**

# Case Summary and Issue

G.H. ("Mother") and D.H. ("Father") appeal the involuntary termination of their parental rights to their two-year-old daughter, W.H., raising a sole issue for our review: whether the juvenile court's finding that the Indiana Department of Child Services ("DCS") presented a satisfactory plan for the care and treatment of W.H. is clearly erroneous. Concluding the juvenile court's finding is not clearly erroneous, we affirm its order terminating Mother's and Father's parental rights.

# Facts and Procedural History

W.H. was born on August 18, 2014, and shortly thereafter, DCS received a report W.H. tested positive for methamphetamine. At that time, Mother and Father had also tested positive for, and confirmed using, methamphetamine before W.H. was born. On August 27, 2014, the DCS filed a petition alleging W.H. to be a child in need of services ("CHINS"). Mother and Father submitted to another drug screen, which again came back positive for methamphetamine. The next day, Mother and Father admitted to the allegations in the CHINS petition and the juvenile court adjudicated W.H. a CHINS. W.H. was removed from Mother and Father's home, and has lived with her foster parents ever since.

Since W.H.'s removal from their care in 2014, Mother and Father have exercised about five visitations with W.H., although they were permitted to

visit with W.H. three or four times per week and lived within a five-minute walk from the DCS office. Mother and Father did not follow any recommendations from their family case manager and did not participate in or complete any counseling or substance abuse programs offered by the DCS.

[4] On September 17, 2015, the DCS filed a verified petition seeking the involuntary termination of Mother's and Father's parental rights to W.H. In March of 2016, S.S. and R.S., W.H.'s paternal grandmother and paternal step-grandfather, filed a petition for guardianship and a motion to intervene. It appears their motion and petition were denied; however, they were permitted to appear as witnesses for Mother and Father.

[5] The juvenile court held an evidentiary hearing on April 5, 2016, at which Mother and Father failed to appear. At the evidentiary hearing, S.S. testified she spoke with Jessica Richardson, the Director of the Spencer County DCS, in late 2014 about relative placement for W.H. Richardson then explained to S.S. what actions she should take to become active in the case, including receiving permission from Mother and Father, filling out paperwork, and obtaining a home check. S.S. took no action until October of 2015 when she requested the relevant paperwork from the DCS. The DCS obliged and sent S.S. the paperwork. S.S. claims she returned the paperwork to the DCS, but the DCS has no record of receiving it. Richardson stated the current plan for W.H. is adoption.

On May 31, 2016, the juvenile court issued its order terminating Mother's and Father's parental rights to W.H. Mother and Father now appeal.

# Discussion and Decision

"[T]he involuntary termination of parental rights is an extreme measure that is designed to be used as a last resort when all other reasonable efforts have failed . . . ." *In re K.W.*, 12 N.E.3d 241, 249 (Ind. 2014) (alteration in original) (citation omitted). Indiana Code section 31-35-2-4(b)(2) sets forth what must be proven in order to terminate parental rights, which we quote in relevant part:

> (B) that one (1) of the following is true:
>
>> (i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.
>>
>> (ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.
>>
>> (iii) The child has, on two (2) separate occasions, been adjudicated a child in need of services;
>
> (C) that termination is in the best interests of the child; and
>
> (D) that there is a satisfactory plan for the care and treatment of the child.

The State must prove each element by clear and convincing evidence. Ind. Code § 31-34-12-2; *In re G.Y.*, 904 N.E.2d 1257, 1261 (Ind. 2009). If a juvenile court determines the allegations of the petition are true, then the court shall

terminate the parent-child relationship. Ind. Code § 31-35-2-8(a). A satisfactory plan "need not be detailed, so long as it offers a general sense of the direction in which the child will be going after the parent-child relationship is terminated." *In re D.D*, 804 N.E.2d 258, 268 (Ind. Ct. App. 2004), *trans. denied*.

[8] When reviewing the termination of parental rights, we will not reweigh the evidence or judge the credibility of the witnesses. *K.T.K. v. Ind. Dep't of Child Servs.*, 989 N.E.2d 1225, 1229 (Ind. 2013). Rather, we consider only the evidence and reasonable inferences that support the judgment. *Id.* Where, as here, a juvenile court has entered findings of fact and conclusions thereon, we will not set aside the juvenile court's findings or judgment unless clearly erroneous. *Id.* In determining whether the court's decision to terminate the parent-child relationship is clearly erroneous, we review the juvenile court's judgment to determine whether the evidence clearly and convincingly supports the findings and the findings clearly and convincingly support the judgment. *Id.* at 1229-30.

[9] Mother and Father's sole argument is the juvenile court's finding that there is a satisfactory plan for the care and treatment of W.H. is clearly erroneous because the DCS did not consider relative placement. Their argument fails for two reasons.

[10] First, the record is clear the DCS did, in fact, consider relative placement. At the evidentiary hearing, Richardson testified,

> We start from the very beginning asking the parents about relatives. . . . [Father] and [Mother] made it very clear that they moved down here to get away from up north from those family members, that those were the family members that they ended up homeless with. They made it very clear that those were the family members that they were using the drugs with. . . . We then did inquire with [paternal step-grandmother] and [paternal grandfather] here locally. As far as placement options, he has some criminal history that kept him from being [a] placement. And [paternal step-grandmother], who has tried to stay involved, has lots of medical issues and lots of other things that kept her from being a possibility.

Transcript at 78-79. Further, Richardson made clear that when S.S. contacted her, she explained to S.S. the actions she needed to take if she desired to have relative placement of W.H. S.S. then took no action for a year until the DCS filed its petition seeking involuntary termination of parental rights.

[11] Second, the DCS is not statutorily required to consider relative placement before terminating parental rights. A similar argument was made in *In re B.M.*, 913 N.E.2d 1283, 1287 (Ind. Ct. App. 2009).[1] There, the father was facing a prison sentence of twenty years to life, and the DCS filed a petition to terminate his parental rights. The father stated his sister would be willing to care for the child, but the sister was never contacted about the suggested arrangement nor did she appear in court on the matter. Further, the father argued Indiana Code

---

[1] Mother and Father also argue our decision in *In re B.M.* should be reconsidered because the CHINS statute is "intimately linked to possible termination proceedings." Appellants' Brief at 8. The decision Mother and Father seek is one for the General Assembly to make, and we decline their invitation to reconsider *In re B.M.*

section 31-34-6-2 (CHINS statute)[2] required the DCS to first consider relative placement. This court held the termination of parental rights was appropriate despite the fact that the father's proposed alternative living arrangement was not considered because the termination statute does not require the DCS to consider relative placement. *Id.* at 1286-87.

[12] We conclude the juvenile court's finding that the DCS presented a satisfactory plan for the care and treatment of W.H. is not clearly erroneous. Contrary to Mother and Father's argument, the DCS did consider relative placement, even though it was not statutorily required to do so. Further, this court on numerous occasions has held that adoption is a satisfactory plan. *Id.* at 1287.

# Conclusion

[13] The juvenile court's finding regarding a satisfactory plan for W.H.'s future care and treatment was not clearly erroneous. Therefore, we affirm its order terminating Mother's and Father's parental rights.

---

[2] Indiana Code section 31-34-6-2 states:

> (a) A juvenile court or the department shall consider placing a child alleged to be a child in need of services with a suitable and willing relative or de facto custodian of the child before considering any other placement for the child.
>
> (b) A juvenile court or the department shall consider placing a child described in subsection (a) with a relative related by blood, marriage, or adoption before considering any other placement of the child.

Affirmed.

Kirsch, J., and Barnes, J., concur.