## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Feb 13 2015, 9:53 am

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

---

ATTORNEY FOR APPELLANT

Mark A. Thoma
Leonard, Hammond, Thoma & Terrill
Fort Wayne, Indiana

ATTORNEY FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Robert J. Henke
James D. Boyer
Deputy Attorneys General
Indianapolis, Indiana

---

# IN THE
# COURT OF APPEALS OF INDIANA

---

In the Matter of the Termination of the Parent-Child Relationship of: J.M., N.H. & N.M. (Minor Children)

N.H. (Father),

*Appellant-Respondent,*

v.

The Indiana Department of Child Services,

*Appellee-Petitioner*

February 13, 2015

Court of Appeals Case No. 02A05-1407-JT-305

Appeal from the Allen Superior Court.
The Honorable Charles F. Pratt, Judge.
The Honorable Lori K. Morgan, Magistrate.
Cause Nos. 02D08-1310-JT-122
02D08-1310-JT-123
02D08-1310-JT-124

**Baker, Judge.**

[1] N.H. (Father) appeals the trial court's order terminating the parent-child relationship between Father and his two children, N.A.H. and N.M. Father argues that there is insufficient evidence to establish that termination is in the children's best interests and that DCS did not have a satisfactory plan for the children. Finding sufficient evidence and no other error, we affirm.

## Facts

[2] Father and J.M. (Mother) have two children: N.A.H., born in 2007, and N.M., born in 2009.[1] In April 2010, the Department of Child Services (DCS) filed a petition alleging that the children were children in need of services (CHINS). The children were removed from the care and custody of the parents in April 2010, and have been out of Father's care since that time.

[3] On May 19, 2010, Father and Mother admitted that the children were CHINS. Among other things, Father admitted to the following allegations in the CHINS petition: the parents were living with the children in a dirty motel room; the family was on the verge of being evicted for failing to pay rent; there was little to no food present in the room; and the children were unkempt and dirty.

[4] On May 24, 2010, the juvenile court adjudicated the children to be CHINS. The juvenile court also issued a dispositional order on the same date. Among

---

[1] Mother had another child, J.M., in 2004. Although Father has included J.M. in this appeal, the undisputed evidence in the record establishes that he is neither the biological nor the legal father of J.M. Therefore, he has no standing to raise any issues with respect to J.M. and we will not consider J.M. to be at issue in this appeal. Mother's parental rights were terminated with respect to all of the children and the parental rights of J.M.'s father were also terminated. Neither Mother nor J.M.'s father are participating in this appeal.

other things, the juvenile court ordered Father to complete the following services and engage in the following behavior:

- Refrain from all criminal activity
- Maintain clean and appropriate housing
- Maintain contact with DCS and the guardian ad litem (GAL)
- Enroll in anger management counseling
- Complete a substance abuse assessment and comply with any recommendations
- Obtain and maintain employment
- Establish paternity
- Participate with home-based counseling
- Pay child support
- Submit to random drug screens and refrain from illegal drug use
- Attend and appropriately participate in all scheduled visits with the children

DCS Ex. 10.  On July 9, 2012, the juvenile court amended the dispositional order, adding a new requirement that Father complete a psychological evaluation and comply with all recommendations stemming from that evaluation.

[5] At the time of the CHINS adjudication, Father was N.A.H.'s legal father and N.M.'s alleged father.  Notwithstanding the juvenile court's order to establish paternity with respect to N.M., nearly four years went by before Father complied.  He finally established paternity with respect to N.M. on March 3, 2014.  Father has paid no child support during the CHINS or termination proceedings.

[6] From April 2010 until the time of the termination hearing in 2014, Father did not have stable housing. During that time, he was either living with friends, living with his mother, or incarcerated. Father was unemployed between December 2011 and March 2014.

[7] On March 25, 2011, Father was convicted of class A misdemeanor operating a vehicle while intoxicated. He received a one-year sentence, suspended to probation. On February 1, 2012, the trial court revoked Father's probation and extended probation for another year. On December 19, 2013, Father pleaded guilty to class D felony operating a vehicle while intoxicated, and was sentenced to three years of probation.

[8] Father used marijuana in July 2010, April 2012, and May 2012. He completed a substance abuse assessment, which recommended that he complete a substance abuse treatment program. He did not complete the substance abuse treatment program. With respect to the court-ordered psychological evaluation, Father claims that he completed the evaluation while incarcerated, but failed to provide any proof of that claim.

[9] While the instant CHINS case was ongoing, DCS received allegations that Father had sexually abused other minor children. On June 16, 2013, Father admitted that he had babysat two girls, approximately 13 and 14 years old, and had touched their "privates" on one or two occasions. Tr. Vol. 1 p. 92-93. DCS substantiated the allegations of sexual abuse. Father testified at the

termination hearing in this case that he has not sought the type of help that he believes he needs to address the issue.

[10] Father did not visit with the children between January and April 2013 or between August 2013 and February 2014. Father admits that he failed to maintain contact with the Family Case Manager (FCM) assigned to his case.

[11] DCS has considered placing the children with their paternal grandmother since the initial hearing in the CHINS case in April 2010. That has never occurred, however, and the children have been in the same foster placement since February 2012. In 2002, DCS removed two of paternal grandmother's children from her care and custody for neglect related to her substance abuse issues. Moreover, paternal grandmother told the FCM that she did not have the financial ability or the physical space to have the children placed with her. She told the FCM that "she would definitely support Children in the best way she could if the kids were maintained with [foster mother]." Tr. Vol 2. p. 64-65. Father did not request a change of placement for the children from foster care to relative care until the final day of the termination hearing.

[12] On October 17, 2013, DCS filed a petition seeking to have Father's parental rights terminated. The juvenile court held a hearing on the petition on March 25, 26, and 27, 2014. On June 24, 2014, the juvenile court issued an order terminating the parent-child relationship between Father and his children. Father now appeals.

# Discussion and Decision

## I. Standard of Review

[13] Our standard of review with respect to termination of parental rights proceedings is well established. In considering whether termination was appropriate, we neither reweigh the evidence nor assess witness credibility. *K.T.K. v. Ind. Dep't of Child Servs.*, 989 N.E.2d 1225, 1229 (Ind. 2013). We will consider only the evidence and reasonable inferences that may be drawn therefrom in support of the judgment, giving due regard to the trial court's opportunity to judge witness credibility firsthand. *Id.* Where, as here, the trial court entered findings of fact and conclusions of law, we will not set aside the findings or judgment unless clearly erroneous. *Id.* In making that determination, we must consider whether the evidence clearly and convincingly supports the findings, and the findings clearly and convincingly support the judgment. *Id.* at 1229-30. It is "sufficient to show by clear and convincing evidence that the child's emotional and physical development are threatened by the respondent parent's custody." *Bester v. Lake Cnty. Office of Family & Children*, 839 N.E.2d 143, 148 (Ind. 2005).

[14] Indiana Code section 31-35-2-4(b)(2) requires that a petition to terminate parental rights for a CHINS must make the following allegations:

    (A)    that one (1) of the following is true:

        (i)    The child has been removed from the parent for at least six (6) months under a dispositional decree.

> (ii)      A court has entered a finding under IC 31-34-21-5.6 that reasonable efforts for family preservation or reunification are not required, including a description of the court's finding, the date of the finding, and the manner in which the finding was made.
>
> (iii)      The child has been removed from the parent and has been under the supervision of a local office or probation department for at least fifteen (15) months of the most recent twenty-two (22) months, beginning with the date the child is removed from the home as a result of the child being alleged to be a child in need of services or a delinquent child;
>
> (B)      that one (1) of the following is true:
>
> (i)      There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.
>
> (ii)      There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.
>
> (iii)      The child has, on two (2) separate occasions, been adjudicated a child in need of services;
>
> (C)      that termination is in the best interests of the child; and
>
> (D)      that there is a satisfactory plan for the care and treatment of the child.

DCS must prove the alleged circumstances by clear and convincing evidence. *K.T.K.*, 989 N.E.2d at 1230.

[15]      In this case, Father challenges only the final two elements of the termination statute. First, he argues that there is insufficient evidence establishing that termination is in the children's best interests. Second, he argues that there is insufficient evidence of a satisfactory plan for the care and treatment of the children.

# II.  Best Interests of the Children

[16]  Turning first to whether there is sufficient evidence supporting the juvenile court's conclusion that termination is in the children's best interests, we note that in considering this element, the juvenile court must weigh the totality of the evidence before it.  *In re A.K.*, 924 N.E.2d 212, 224 (Ind. Ct. App. 2014).  In doing so, "the trial court must subordinate the interests of the parents to those of the child[ren] involved."  *Id.*  The court need not wait until the child is irreversibly harmed before terminating the parent-child relationship.  *Id.*  Among the evidence that may be considered is the services offered to a parent and his response to and participation with those services.  *In re M.S.*, 898 N.E.2d 307, 311 (Ind. Ct. App. 2008).[2]

[17]  In this case, the record reveals that Father had nearly four years to complete court-ordered services and achieve a lifestyle that is safe and appropriate for his children.  He has wholly failed to do so:

- Father failed to establish paternity with respect to N.M. for nearly four years.
- Father has paid no child support during the CHINS or termination proceedings.
- Father has failed to maintain stable and appropriate housing.
- Father was unemployed between December 2011 and March 2014.

---

[2] To the extent that Father focuses on paternal grandmother's suitability as a caregiver, we note that the best interests analysis focuses on *his* ability to safely parent his children rather than the suitability of a relative care placement.

- Father amassed two separate criminal convictions, including one felony, during the CHINS proceeding. At one point, his probation was revoked. At another, he was incarcerated for several months.
- Father used marijuana repeatedly and failed to participate with a court-ordered substance abuse program.
- Father was unable to provide proof that he completed a psychological evaluation.
- DCS substantiated allegations that Father had sexually abused two other children while the CHINS case was ongoing. He has admittedly failed to seek treatment he believes he needs to address this issue.
- Father failed to visit with the children between January and April 2013 and between August 2013 and February 2014.
- Father failed to maintain regular contact with the FCM assigned to his case.

In other words, the record is replete with evidence of Father's wholesale failure to comply with court orders, get the treatment he needs, comply with the law, or in any way demonstrate that he is able and willing to be a safe and appropriate parent to his children. He had four years to comply, and he did not do so. Under these circumstances, there was sufficient evidence supporting the juvenile court's conclusion that termination of the parent-child relationship is in the children's best interests.

## III. Satisfactory Plan

[18] Finally, Father argues that there is insufficient evidence establishing that there is a satisfactory plan for the care and treatment of the children. DCS's plan for the care and treatment of the children is adoption, which is a satisfactory plan. *See, e.g.*, *In re B.M.*, 913 N.E.2d 1283, 1287 (Ind. Ct. App. 2009) (noting that adoption is a satisfactory plan); *In re B.D.J.*, 728 N.E.2d 195, 204 (Ind. Ct. App.

2000) (finding that adoption is a satisfactory plan even if a definite adoptive family has not been identified).

[19]  Essentially, Father argues that a better, more satisfactory plan for placement of the children would be to place them in relative care.  Specifically, he argues that they should have been placed with paternal grandmother.  The uncontested evidence reveals that DCS repeatedly considered placement of the children with paternal grandmother throughout the CHINS case.  She was not found to be a suitable placement, however, for a variety of reasons.  Among other things, she had children removed from her care for substance abuse in the past, she was financially unable to care for the children, she did not have the space to care for the children, and, for most of the case, she indicated to the FCM that she was unable to have the children placed with her.  Furthermore, Father did not even request a change of placement until the final day of the termination hearing, despite the fact that he had had four years to raise the issue.

[20]  Father's arguments amount to a request that we reweigh the evidence, which we will not do.  The evidence in the record supports a conclusion that adoption is a satisfactory plan for these children.

[21]  The judgment of the juvenile court is affirmed.

Vaidik, C.J., and Riley, J., concur.